UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN BRAVO-ZAMBRANO, | CASE NO. C26-0167JLR |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI, et al., | |
| Respondents. | |

## I.   INTRODUCTION

Before the court is *pro se* Petitioner Juan Bravo-Zambrano's petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Pet. (Dkt. # 3).)  The Government[1] opposes the petition.  (Return (Dkt. # 6).)  Petitioner did not file a traverse.  (*See generally* Dkt.)  The

---

[1] The Federal Respondents are United States Attorney General Pamela Bondi; Department of Homeland Security ("DHS") Secretary Markwayne Mullin; and Acting Director of the Seattle Field Office of United States Immigration and Customs Enforcement ("ICE") Camilla Wamsley (collectively, the "Government").  (Pet. at 1.)

ORDER - 1

court has considered the petition, the parties' submissions, the relevant portions of the record, and the applicable law.  Being fully advised, the court GRANTS the petition.

## II.   BACKGROUND

Petitioner is a citizen of Mexico presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  (Pet. at 1; Reed Decl. (Dkt. # 8) ¶ 3.)  On December 29, 2010, the Government admitted Petitioner to the United States as a permanent resident.  (Reed Decl. ¶ 3.)

On April 10, 2019, the U.S. District Court for the Eastern District of Washington convicted Petitioner for conspiracy to distribute methamphetamine, cocaine, heroin, and N-phenyl propenamide and sentenced him to 40 months imprisonment and five years of supervised release.  (*See id*. ¶ 4a; *see also* Andrade Decl. (Dkt. # 7), Ex. B (2019 Judgment).)  On August 28, 2019, the Government issued Petitioner a Notice to Appear charging him as removable due to his April 2019 conviction.  (Reed Decl. ¶ 6; Andrade Decl., Ex. A (Notice to Appear).)  On May 5, 2020, an immigration judge (1) found Petitioner statutorily ineligible for asylum or withholding of removal; (2) denied Petitioner's application for protection under the Convention Against Torture ("CAT"); and (3) ordered Petitioner removed to Mexico.  (Reed Decl. ¶ 7; Andrade Decl., Ex. L (2020 IJ Order).)

On May 28, 2020, the Government released Petitioner on an Order of Release on Recognizance ("OREC") pursuant to the bail application process established by the court in *Zepeda Rivas v. Jennings*, a class action challenging conditions at the Mesa Verde Detention Facility and the Yuba County Jail on COVID-19-related grounds.  (*See* Reed

ORDER - 2

Decl. ¶¶ 5, 8); *see also Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 40-41 (N.D. Cal. 2020), *aff'd in part and ref'd to mediation*, 845 F. App'x 530 (9th Cir. 2021).  The *Zepeda Rivas* court implemented a system to "avoid releasing detainees who are a danger to the community and to minimize the possibility that released detainees will fail to appear for their removal proceedings." *Zepeda Rivas*, 445 F. Supp. 3d at 40.  On May 29, 2020, Petitioner appealed the IJ's order with the Board of Immigration Appeals ("BIA").  (Reed Decl. ¶ 9.)

On February 15, 2022, and July 5, 2022, the U.S. District Court for the Eastern District of Washington found Petitioner guilty of supervised release violations including failure to report for urine analysis, failure to report to the probation office, and failure to complete drug abuse evaluation.  (*See* Andrade Decl., Exs. D, E (2022 Violations).)  As a result of these violations, the court sentenced Petitioner to three months and seven months in federal custody, respectively.  (Reed Decl. ¶¶ 4c-d.)  On December 1, 2022, the Government revoked Petitioner's OREC and took him back into ICE custody after determining that Petitioner (1) violated his OREC by using a controlled substance, failing to report to his probation officer, and an arrest for harassment and (2) was a flight risk. (*Id.* ¶ 10.)

On March 18, 2023, the U.S. District Court for the Northern District of California ordered the Government to release Petitioner because he was a *Zepeda Rivas* class member and because the Government had not met its burden to establish that Petitioner was a flight risk.  (*See id.* ¶ 11.)  Under the settlement agreement reached in *Zepeda Rivas*, ICE agreed to forgo re-detaining Petitioner or his fellow class members for three

ORDER - 3

years following the approval of the settlement "unless they pose[d] a threat to public safety or national security, and/or risk of flight." *See Zepeda Rivas*, No. 20-cv-2731-VC, Dkt. No. 1205-1 at 13 (Subsection III.A). The three-year period elapsed on June 9, 2025. *Id.*, Dkt. Nos. 1205-1, 1258. On March 20, 2023, the Government complied with the court's order and released Petitioner on an OREC with a GPS monitor. (*Id.* ¶ 12.) On May 2, 2023, the BIA remanded Petitioner's case to the IJ. (*Id.* ¶ 13.)

On March 19, 2024, the U.S. District Court for the Eastern District of Washington found Petitioner guilty of a supervised release violation and sentenced him to nine months in federal custody. (*Id.* ¶ 4f; *see also* Andrade Decl., Ex. F (2024 Violation).) On September 27, 2024, after Petitioner completed his sentence, ICE took Petitioner into custody for approximately four hours. (Reed Decl. ¶ 14.) That same day, the Government again released Petitioner on an OREC because he was a *Zepeda Rivas* class member. (*Id.*; *see also* Andrade Decl., Ex. G (2024 OREC).) As a condition of his release, the Government subjected Petitioner to electronic monitoring and enrollment in DHS's Alternatives to Detention Program ("ATD"). (2024 OREC.)

On June 25, 2025, an IJ at the San Francisco Immigration Court denied Petitioner's application for protection under the CAT and ordered him removed to Mexico. (Reed Decl. ¶ 15; Andrade Decl., Ex. K (2025 IJ Order).) On July 18, 2025, Petitioner appealed the IJ's order to the BIA and that appeal remains pending. (Reed Decl. ¶ 16, 19-22 (describing the latest procedural developments of Petitioner's immigration case).) On September 27, 2025, ICE re-arrested Petitioner and transferred him to the NWIPC, where he has since remained. (*Id.* ¶ 18; *see also* Andrade Decl., Ex. I

ORDER - 4

(Warrant).)  The Government represents that (1) Petitioner is no longer a *Zepeda Rivas* class member, as the three-year settlement period has expired and (2) since his September 27, 2024 OREC release, Petitioner violated the conditions of his release 15 times and was twice convicted in the Benton County, Washington, District Court for driving without a license.  (Reed Decl. ¶¶ 4g-h (describing the driving without a license convictions), 17 (listing the 15 OREC violations, consisting primarily of missed biometric check-ins and callbacks).)

On February 12, 2026, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C § 2241.  (Pet.)  Petitioner seeks four forms of relief: (1) immediate release under the most recent conditions of supervision; (2) an order enjoining the Government from re-detaining Petitioner unless they comply with the relevant regulations concerning revocation of supervised release; (3) an order enjoining the Government from re-detaining Petitioner unless the Government provides him a pre-deprivation hearing before an impartial decisionmaker; and (4) an order terminating the current immigration proceedings against Petitioner.  (Pet. ¶ 15.)  The petition is fully briefed and ripe for the court's consideration.

### III.    ANALYSIS

The court addresses each of Petitioner's requests for relief in turn.

**A.    The Government's Re-detention of Petitioner is Unlawful.**

Petitioner asserts that his arrest and re-detention without notice and an opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution.  (Pet. at 3.)  In response, the Government asserts that Petitioner is lawfully

ORDER - 5

detained pursuant to 8 U.S.C. § 1226(c) and that "due process did not require a pre-detention hearing here." (Return at 1, 8.) The court agrees with Petitioner for the reasons set forth below.

The INA permits detention of noncitizens present in the United States during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Although § 1226(c) requires mandatory detention for certain noncitizens "who fall into one of the enumerated categories involving criminal offenses[,]" *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), all persons, regardless of their immigration status, are entitled to due process under the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Thus, even when the Government believes it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). Therefore, where, as here, a noncitizen brings a habeas petition to challenge their detention as violative of due process, the Government's alleged basis for the Petitioner's detention is "irrelevant[.]" *Sarwari v. Wamsley*, C26-00121TL, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026) (holding that the statutory basis for the Government's detention of Petitioner is "irrelevant" because "the habeas petition before the [c]ourt is not directed at [the Government's] classification of Petitioner, but challenges his re-

detention…as violative of due process"). Consequently, the court need not consider the merits of the Government's arguments regarding its authority to detain Petitioner.

Because Petitioner challenges an administrative action depriving him of his liberty, the court agrees with the Government that the *Mathews v. Eldridge* balancing test applies here. (*See* Return at 8.) The *Mathews* test weighs three factors: (1) the private interest at stake, (2) the risk of erroneous deprivation through existing procedures, and (3) the Government's interest. 424 U.S. 319, 334-35 (1976). For the reasons set forth by the Honorable Kymberly K. Evanson in *E.A T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025), the court finds that (1) Petitioner's interest in not being detained is "the most elemental of liberty interests[,]" (2) the risks of erroneous deprivation of liberty are high, and (3) the Government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was previously released. *Id*. at 1320-24 (citation omitted). Therefore, the court concludes that the *Mathews* factors weigh in Petitioner's favor and his re-detention without a pre-deprivation hearing violated his due process rights. *See also A.B.J.C. v. Hermosillo*, No. C26-0185JNW, 2026 WL 497097, at *2 (W.D. Wash. Feb. 23, 2026) (compiling cases in this District and elsewhere in which courts required the Government to provide due process to noncitizens before revoking supervised release and re-detaining them).

The court is not convinced by the Government's arguments to the contrary. As to the first *Mathews* factor, the Government first argues that Petitioner's "liberty interest was conditional, and was always subject, in part, on Petitioner not committing any crimes and complying with the requirements of his release." (Return at 9.) The court, however,

ORDER - 7

rejects both the Government's framing of the conduct at issue and interpretation of the governing law. That the Government may revoke supervised release when a noncitizen violates the conditions of release is not in dispute. Rather, the operative question is whether, without any process whatsoever, the Government may re-arrest an individual it believes has not complied with the conditions of a discretionary grant of release from custody. The court concludes that the Constitution does not support such action.

As to the second *Mathews* factor, the Government first cites *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) to buttress its argument that "Petitioner's re-detention qualifies as a special case due to his pattern of noncompliance with the conditions of his release." (Return at 9.) *Zinermon*, however, supports no such conclusion. In *Zinermon*, the Supreme Court observed that "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property[,]" but recognized that, under the *Parratt* rule, post-deprivation remedies provide all the process that is due where "the value of predeprivation safeguards [] is negligible in preventing the kind of deprivation at issue." *Zinermon*, 494 U.S. at 127-29 (discussing *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984)). However, as one court in this District has held,

> The *Parratt* rule applies to a unique subset of deprivations where there is no practical way that "predeprivation procedural safeguards could address the risk of deprivations" because the nature of the deprivation is such that it cannot be foreseen by the state. In *Parratt*, the deprivation in question was the negligent loss of a person's property while he was in state custody, and in *Hudson*, the deprivation resulted from unauthorized and tortious conduct by a state employee. Under the unusual circumstances where pre-deprivation process is not practicable "because of the random and unpredictable nature of the deprivation" at issue, the *Parratt* rule holds that a tort remedy provides the process that is due . . . . The *Parratt* rule obviously does not apply here.

ORDER - 8

*Sarwari*, 2026 WL 279968, at *4-5 (internal citation omitted and emphasis added).  The court adopts the *Sarwari* court's analysis and concludes that Petitioner's redetention does not qualify as a special case under the *Parratt* rule.

The Government's reliance on *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (S.D. Cal. Aug. 28. 2025), is also misplaced.  (*See* Return at 9-10.)  The Government avers that, under *Martinez Hernandez*, the risk of an erroneous deprivation of liberty can be reduced through a "prompt, post-deprivation process" in light of Petitioner's criminal record, OREC violations, and status as a noncitizen subject to mandatory detention.  (*Id.*)  The Government's argument fails for several reasons.  First, the *Martinez Hernandez* court and the cases it cites involved motions for a preliminary injunction.  *Martinez Hernandez*, 2025 WL 2495767, at *12.  These courts determined that "prompt, post-deprivation process [was] required" even before the petitions were adjudicated.  *Id.*  The courts, however, "were *not* making an ultimate determination that [a prompt, post-deprivation hearing] was all the process the petitioners were due."  *Sarwari*, 2026 WL 279968, at *5 (citing *Martinez Hernandez*, 2025 WL 2495767, at *1 (E.D. Cal. Aug. 28, 2025)) (emphasis in the original).  Additionally, the *Martinez Hernandez* court conditioned its holding that a pre-deprivation hearing would be "impracticable and/or would have motivated [petitioner's] flight[,]" on the caveat that this may be true only "if Respondent's view of the facts is correct[.]"  *Id.*  Here, Petitioner disputes the accuracy of the alleged OREC infractions.  (Pet. at 3.)  Indeed, the warrant authorizing his re-arrest does not refer to OREC infractions or his prior convictions.  (Warrant.)  Additionally, given that the Government waited a year

ORDER - 9

after the first OREC infraction to take enforcement action, it entirely fails to show how Petitioner's circumstances constitute a special case that "urgently require[s] arrest" such that providing notice and a pre-deprivation hearing would reasonably be considered "impracticable[.]" *Martinez Hernandez*, 2025 WL 2495767, at *11; (*see also* Reed Decl. ¶ 17a (showing that Petitioner's first alleged OREC infraction is dated October 27, 2024).)  Here, where it is undisputed that Petitioner was arrested with no notice of the reasons for the arrest, the risk of erroneous deprivation is high.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high.") Courts in this District routinely conclude that, given these circumstances, a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (citing *Domingo v. Kaiser*, No. C25-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025); *see also Sarwari*, 2026 WL 279968, at *6 (so holding).

Finally, as to the third *Mathews* factor, the Government does not meaningfully address whether it has an interest in re-detaining previously released noncitizens without a hearing, asserting only that its interest in "public safety and prevention of flight" are "substantial[.]"  (Return at 10.)  Courts in this District that have considered this argument, however, have rejected it, concluding that the Government's interest in re-detaining noncitizens who were previously released is low where the costs of providing a predeprivation hearing "are far outweighed by the risk of erroneous deprivation of the

ORDER - 10

liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Furthermore, the court concludes that the Government's interest is weakened by the fact it they waited a year to re-arrest Petitioner. (*See* Reed Decl. ¶ 17 (stating that "ICE determined that Petitioner was subject to enforcement action" after a year of alleged ATD violations).)

In sum, the court finds that all three *Mathews* factors weigh in Petitioner's favor, Therefore, his re-detention without a pre-detention hearing violated Petitioner's due process rights.

**B.    The Court Grants In Part Petitioner's Request for Injunctive Relief**

Petitioner seeks three forms of prospective injunctive relief: (1) an injunction prohibiting the Government from re-detaining him unless it follows its own procedure concerning OREC revocation; (2) an injunction prohibiting the Government from re-detaining him without first holding a hearing before a neutral decisionmaker; and (3) an order permanently terminating the current immigration proceedings against him. (Pet. at 5.) The court addresses each request in turn.

1.    <u>The Government Must Comply with the Law Before Re-Detaining Petitioner.</u>

Having found that the Government violated Petitioner's due process rights, the court further finds that issuing injunctive relief is appropriate. The court may provide injunctive relief if Petitioner meets the standard for a permanent injunction. "According to well-established principles of equity, a [petitioner] seeking a permanent injunction

must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Petitioner must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between him and the Government, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Id.* (citations omitted).  "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."  *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights.") (citations omitted).

First, Petitioner has suffered irreparable harm and such harm is likely to recur absent injunctive relief to protect against further constitutional violation.  Specifically, the Government has already detained him without due process and identified him as a target for detention.  Despite this court's many orders holding that the Government's conduct in revoking release and re-detaining noncitizens without due process is unconstitutional, the conduct has continued.  Thus, absent injunctive relief, Petitioner may be subject to the same violative conduct again.  The other *eBay* factors similarly favor injunctive relief.  Monetary damages are an inadequate remedy for deprivation of liberty; requiring the Government to follow constitutional procedures imposes no undue

ORDER - 12

hardship, and the public interest favors compliance with the law. *See Palacios v. Hermosillo*, No. C26-491JNW, 2026 WL 686138, at \*10 (W.D. Wash. Mar. 11, 2026) (so holding). Courts in this district routinely grant such relief under comparable circumstances. *See id.* (compiling cases in this District so holding).

For the foregoing reasons, the court finds that Petitioner is in custody in violation of the Constitution of the United States. Petitioner must be released and may not be re-detained without a hearing before an immigration judge.

2. The Court Denies Petitioner's Request that the Court Terminate the Immigration Proceedings Against Him.

A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of Petitioner's detention pending a final order of removal. 28 U.S.C. § 2241(c)(3). It is not, however, the proper vehicle to bring claims "linked to the order of removal[.]" *Martinez v. Napolitano*, 704 F.3d 620, 622-23 (9th Cir. 2012). Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals. . . [is] the sole and exclusive means for judicial review of an order of removal[.]" 8 U.S.C. § 1252(a)(5).

Here, Petitioner challenges the sufficiency of the proceedings related to his asylum claim. (Pet. at 4 (asserting that the Government failed to record his final hearing for asylum and plans to restart the case during Petitioner's civil immigration detention).) Because Petitioner "challenges the procedure and substance of an agency determination inextricably linked to the order of removal," the court agrees with the Government that it

ORDER - 13

lacks jurisdiction to consider such a challenge.  (Return at 11.)  Therefore, the court declines to grant Petitioner the relief sought as to his current immigration case.

### IV.   CONCLUSION

Accordingly, the court orders as follows:

(1) The petition for a writ of habeas corpus (Dkt. # 3) is GRANTED;

(2) Respondents SHALL release Petitioner Juan Bravo-Zambrano from detention within FORTY-EIGHT (48) hours pursuant to the conditions of his most recent Order of Release on Recognizance;

(3) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner until after an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal;

(4) Within SEVENTY-TWO (72) hours of this Order, Respondents SHALL file with the court a status report confirming that Petitioner has been released from custody and informing the court of the date and time of his release.

Dated this 31st day of March, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 14